SCOTT N. SCHOOLS, SC SBN 9990
United States Attorney
JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-7124
FAX: (415) 436-7169

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZHONG ZHANG,<br>JIE MA,<br><br>Plaintiffs,<br><br>v.<br><br>EMILIO T. GONZALEZ, Director of the U.S. Citizenship and Immigration Services;<br>ALBERTO R. GONZALES, as Attorney General of the United States;<br>MICHAEL CHERTOFF, in his Official Capacity, Secretary, United States Department of Homeland Security,<br><br>Defendants. | No. C 07-2754 JF<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; and DECLARATION OF F. GERARD HEINAUER |

**TABLE OF CONTENTS**


INTRODUCTION . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 1

GENERAL PRINCIPLES APPLICABLE TO THIS MOTION . . . . . . . . . . 1

A. LEGAL STANDARD . . . . . . . . . . 1

B. ADJUSTMENT OF STATUS . . . . . . . . . . 2

C. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT . . . . . . . . . . 3

ANALYSIS . . . . . . . . . . 4

A. ALL DEFENDANT'S EXCEPT CHERTOFF SHOULD BE DISMISSED . . . . . . . . . . 4

B. RELIEF IS NOT AVAILABLE UNDER THE APA . . . . . . . . . . 5

1. Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion . . . . . . . . . . 5

2. The Delay is Reasonable . . . . . . . . . . 5

a. A Rule of Reason Governs the Agency Decisions at Issue . . . . . . . . . . 5

b. There Is No Congressionally Mandated Timetable . . . . . . . . . . 6

c. The Impact of the Delay is Minimal Comparison with the National Interest in Complete and Thorough Background Checks . . . . . . . . . . 8

d. The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants . . . . . . . . . . 9

e. The Agencies are Exercising Every Effort to Address the Delay . . . . . . . . . . 11

C. MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFFS' CLAIM IS NOT CLEAR AND CERTAIN . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alkenani v. Barrows,
356 F. Supp. 2d 652 (N.D. Tex. 2005) . . . . . 12

Allied Chemical Corp. v. Daiflon, Inc.,
449 U.S. 33 (1980) . . . . . 4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 1

In re Barr Laboratory Inc.,
930 F.2d 72 (D.C. Cir. 1991) . . . . . 6, 11

Boim v. Quranic Literacy Institute,
291 F.3d 1000 (7th Cir. 2002) . . . . . 10

Califano v. Sanders,
430 U.S. 99 (1977) . . . . . 4

Celotex Corp. v. Cattrett,
477 U.S. 317 (1986) . . . . . 2

Cheney v. United States District Court for the District of Columbia,
542 U.S. 367 (2004) . . . . . 4

Cordoba v. McElroy,
78 F. Supp. 2d 240 (S.D.N.Y. 2000) . . . . . 7

Espin v. Gantner,
381 F. Supp. 2d 261 (S.D.N.Y. 2005) . . . . . 12

Fraga v. Smith,
607 F. Supp. 517 (D. Or. 1985) . . . . . 10

Freeman v. Arpaio,
125 F.3d 732 (9th Cir. 1997) . . . . . 1

Heckler v. Ringer,
466 U.S. 602 (1984) . . . . . 4

INS v. Miranda,
459 U.S. 14 (1982) . . . . . 7

Kildare v. Saenz,
325 F.3d 1078 (9th Cir. 2003) . . . . . 4, 13

Li v. Chertoff,
482 F. Supp. 2d 1172 (S.D. Cal. 2007) . . . . . 5

Liberty Fund, Inc. v. Chao,
394 F. Supp. 2d 105 (D.D.C. 2005) . . . . . 6, 8, 9, 10, 12

Manzoor v. Chertoff,
472 F. Supp. 2d 801 (E.D. Va. 2007) . . . . . 11

Marincas v. Lewis,
92 F.3d 195 (3d Cir. 1996) . . . . . 7

Mashpee Wampanoag Tribal Council, Inc. v. Norton,
336 F.3d 1094 (D.C. Cir. 2003) . . . . . 11

Nelson v. Kleppe,
457 F. Supp. 5 (D. Idaho 1976) . . . . . 4

Norton v. Southern Utah Wilderness Alliance,
542 U.S. 55 (2004) . . . . . 3

Nova Stylings Inc. v. Ladd,
695 F.2d 1179 (9th Cir. 1983) . . . . . 4

Orkin v. Taylor,
487 F.3d 734 (9th Cir. 2007) . . . . . 7

Rockbridge v. Lincoln,
449 F.2d 567 (9th Cir. 1971) . . . . . 4

Safadi v. Howard,
466 F. Supp. 2d 696 (E.D. Va. 2006) . . . . . 9

Saleh v. Ridge,
367 F. Supp. 2d 508 (S.D.N.Y. 2005) . . . . . 11, 12

Skelly Oil Co. v. Phillips Petroleum Co.,
339 U.S. 667 (1950) . . . . . 4

Staacke v. U.S. Department of Labor,
841 F.2d 278 (9th Cir. 1988) . . . . . 4

Takkallapalli v. Chertoff,
487 F. Supp. 2d 1094 (W.D. Mo. 2007) . . . . . 5

Telecomm. Research and Action Ctr. v. FCC,
750 F.2d 70 (D.C. Cir. 1984) . . . . . 5, 8

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
435 U.S. 519 (1978) . . . . . 11

Walters v. Reno,
145 F.3d 1032 (9th Cir. 1998) . . . . . 10

Wright v. Califano,
587 F.2d 345 (7th Cir. 1978) . . . . . 10, 11

Wright v. City of Roanoke Redevelopment and Housing,
479 U.S. 418 (1987) . . . . . 6

## STATE CASES

9/11 Commission Report, 2004 WL 1634382 (July 22, 2004) . . . . . 8

Dmitriev v. Chertoff, Number C 06-7677 JW, 2007 WL 1319533 (N.D. Cal. May 4, 2007) . . . . . 4

Eldeeb v. Chertoff, et al., 2007 WL 2209231 (M.D. Fla. July 30, 2007) . . . . . 3, 5, 7, 8, 12

Patil v. Mueller, et al., 2007 WL 1302752 (E.D. Va. Apr. 30, 2007) . . . . . 9

RMW, 2007 WL 2070325 (N.D. Cal. July 13, 2007) . . . . . 4

Razaq v. Poulos, Number C 06-2461 WDB, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007) . . . . . 7

Sozanski v. Chertoff, et al., No. 06-CV-0993 N, 2006 WL 4516968 (N.D. Tex. Dec. 11, 2006) . . . . . 5

Sze v. INS, Number C 97-0569 SC, 1997 WL 446236 (N.D. Cal. Jul. 24, 1997) . . . . . 9

Yan v. Mueller, WL 1521732 (S.D. Tex. May 24, 2007) . . . . . 5, 11

## DOCKETED CASES

Clayton v. Chertoff, et al., No. 07-cv-02781-CW (N.D. Cal. Oct 1, 2007) . . . . . 4

Konchitsky v. Chertoff, No. C-07-00294 . . . . . 4

## FEDERAL STATUTES

5 U.S.C. § 551(13) . . . . . 3

5 U.S.C. § 701, et seq . . . . . 3

5 U.S.C. § 706(1) . . . . . 3

6 U.S.C. § 271(b) . . . . . 2, 4

6 U.S.C. § 551(d) . . . . . 2

8 C.F.R. § 245 et seq . . . . . 2

8 U.S.C. § 1105(a) . . . . . 2, 6

8 U.S.C. § 1255 . . . . . 2

8 U.S.C. § 1571 . . . . . . . . . . 6

28 U.S.C. § 2201 ("DJA") . . . . . . . . . . 4

Fed. R. Civ. P. 56(c) . . . . . . . . . . 1

## I. INTRODUCTION

Plaintiffs Zhong Zhang and Jie Ma ask this Court to issue a writ of mandamus, compelling Defendants to make a determination on their applications for adjustment of status. They also ask the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act. Plaintiffs' claims must fail. Plaintiffs' applications remain pending because their name check are not yet complete. The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## II. BACKGROUND

On April 12, 2005, Plaintiff Zhong Zhang filed an I-485 application for adjustment of status, and Plaintiff Jie Ma filed his application for adjustment of status on April 21, 2005. See Declaration of F. Gerard Heinauer (Heinauer Decl.) ¶ 3 - 4 (attached as Exhibit A). Plaintiff Zhong Zhang's application is ready to be adjudicated except for her pending background and security check. Heinauer Decl. ¶ 9. Plaintiff Jie Ma's name check was completed on September 11, 2005, however, as a derivative spouse, his application cannot be adjudicated until the principal application has been completed. Heinauer Decl. ¶ 17. Plaintiff filed the instant Complaint on May 25, 2007.

## III. GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if the fact may affect the outcome of the case. See id. at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose

of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

B. ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See 8 C.F.R. § 245 et seq.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that he is not a risk to national security or public safety. See Heinauer Decl. ¶ 9. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation [("FBI")] and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. See Heinauer Decl. ¶ 9.

The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007). Name checks are performed at the request of a variety of organizations, including the federal judiciary, friendly foreign police and intelligence agencies, and state and local governments. Id. at *3. When the FBI conducts a name check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3. Generally, the FBI employs a first-in, first-served protocol. Id. at *4. However, when an applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. Id. USCIS determines which name checks are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. B). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists. This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing times, including "hits," common names, and expedited name checks. Id. at *4.

C. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S.

55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "'mandamus does not lie to review the discretionary acts of officials.'" See Nova Stylings Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir. 1983), quoting Nelson v. Kleppe, 457 F. Supp. 5, 8 (D. Idaho 1976).

## IV. ANALYSIS

### A. ALL DEFENDANTS EXCEPT CHERTOFF SHOULD BE DISMISSED

Courts in this District have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557. Accordingly, Defendants Robert S. Mueller and Peter D. Keisler should be dismissed. See Clayton v. Chertoff, et al., No. 07-cv-02781-CW, slip. op., at 13 (N.D. Cal. Oct 1, 2007); Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007

WL 1319533, at *4 (N.D. Cal. May 4, 2007).

B. RELIEF IS NOT AVAILABLE UNDER THE APA

1. Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

Numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; see also Takkallapalli v. Chertoff, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); Li v. Chertoff, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); Sozanski v. Chertoff, et al., No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases). Compelling USCIS to process Plaintiffs' applications in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner. Accordingly, Plaintiffs essentially seek to compel a discretionary action, and relief is unavailable under the APA.

2. The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiffs have failed to that the delay at issue here is unreasonable. To determine whether the delay is egregious, such that relief under the APA is warranted, several circuits have adopted the six-part test first articulated in Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC").

a. A Rule of Reason Governs the Agency Decisions at Issue

The first TRAC factor requires an agency to govern decisions with a rule of reason. TRAC, 750 F.2d at 80. Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. See Eldeeb v. Chertoff, No. 07cv236-T-

17EAJ, 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007). Once the FBI name check for Plaintiff Zhang has been completed, USCIS will promptly adjudicate Plaintiffs' applications. Further, USCIS regularly monitors the case to determine whether the name check remains pending. Heinauer Decl. ¶ 20. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

In Plaintiffs' case, this means that USCIS must await the results of the FBI name check before reaching a decision on Plaintiffs' applications, and the FBI must be given time to perform an accurate and thorough check. Heinauer Decl. ¶ 13. Moreover, the FBI's "first in, first out" processing approach is a method that is "deserving of deference." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); see also In re Barr Lab. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

b. There Is No Congressionally Mandated Timetable

The second TRAC factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. Contra Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C. §§ 1105(b)(1), 1255(a).

Defendants acknowledge that Congress has observed that in most instances, applications for immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571. However, the statute expresses a "sense of Congress," and is not a mandate. Id. The language in § 1571 is merely precatory, and does not impose a deadline on Defendants. See Wright v. City of Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in

precatory terms does not create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case. The events of September 11, 2001 marked a dramatic shift in issues involving national security. Courts have taken note of this change:

> It is well known that since September of 2001, the FBI's resources have been sorely taxed by the demands that have been made on it by the Administration. Legitimate national security concerns, intensified by the sophistication of some of the threats to the lives of people in this country, have forced federal agencies to be considerably more careful and thorough in their investigations than they were in the past. In short, there was a lot more work for the FBI to do and it had to be done a lot more carefully.

Razaq v. Poulos, No. C 06-2461 WDB, 2007 WL 61884, at *12 (N.D. Cal. Jan. 8, 2007).

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual review. Id. at *2. Of those remaining checks, 22 percent are returned within two months. Id. The FBI

processes name checks chronologically, based on the date the name check is submitted. Id.

Before September 11, 2001, the FBI processed approximately 2.5 million name checks per year, checking only the "main" files. Id. at *3. In Fiscal Year 2006, the FBI processed over 3.4 million name checks. Id. In addition, the FBI began checking "reference" files. Id. This expansion of the name check procedures prompted USCIS, in December 2002 and January 2003, to resubmit 2.7 million name check requests, for those with pending applications for immigration benefits. Id. at *4. The FBI is currently still working to resolve 440,000 of these resubmitted name checks; because the FBI processes name checks chronologically, the processing of regular name checks has been delayed. Id. Name checks that exceed the two month window require personal attention of the processing agent. Id. at *5. The FBI currently processes approximately 340,000 name checks per year by hand. Id. Thus, it is evident that there are substantial factors contributing to the backlog.

c. The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

The third TRAC factor is the delay's impact on human health, welfare, and economic harm to Plaintiffs. This factor's analysis overlaps with the analysis of the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty Fund, 394 F. Supp. 2d at 118. Plaintiffs may be inconvenienced by the delay in adjudication, but this individual interest cannot outweigh Defendants' interests in fully and accurately completing each name check. Security background checks for individuals seeking immigration benefits is a key component to our nation's national security. See The 9/11 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the immigration system set a higher bar for determining whether individuals are who or what they claim to be....it could have potentially have excluded, removed, or come into further contact with several hijackers who did not appear to meet the terms for admitting short-term visitors.").

In most cases, the adverse impact caused by the delay is not substantial. Applicants for adjustment of status who have pending applications may apply for and obtain employment authorization for the entire time the application is pending. Additionally, most applicants may

also apply for and receive advance parole to enable them to travel abroad during the pendency of their application. Heinauer Decl. ¶ 23. Even when a more substantial impact is felt by an applicant, this impact, "is unlikely to rise to the level that would significantly change the Court's assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities." Liberty Fund, 394 F. Supp. 2d at 118. As the highest of priorities, "our national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency." Safadi v. Howard, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006). Although a delay in processing may have a negative impact, "nevertheless, in this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities." Patil v. Mueller, et al., No. C 07cv71 JCC, 2007 WL 1302752 at *2 (E.D. Va. Apr. 30, 2007) (holding that the Court had no jurisdiction to issue a writ of mandamus due to legal and policy considerations). Thus, when balancing the agencies' interests in defending against threats to national security against the Plaintiffs' interest in adjudication, the interests of the nation must prevail.

d. The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty Fund, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

In Liberty Fund, the court refused to grant mandamus relief where it was requested solely due to the length of the delay in processing alien labor certifications. 394 F. Supp. 2d at 115. Applying the TRAC factors, the court held that without a statutory timetable governing agency action, the TRAC factor, "that weighs most heavily under the circumstances of the case is the

fourth factor - the effect of granting relief on the agency's competing priorities." Id. at 116. The court reasoned that the agency's "first in, first out processing" was deserving of deference because any grant of relief to petitioners would result in no net gain - petitioners would move to the front of the queue at the expense of other similarly situated applicants. After examining the agency's priorities, growing workload, and good faith efforts to alleviate the delays, the court concluded that mandamus relief was not warranted. Id. at 119.

Just as in Liberty Fund, Plaintiffs' argument of unreasonable delay in this case must also fail. Plaintiffs ask this Court to find that USCIS has not adjudicated their I-485 applications in a reasonable period of time. Plaintiffs' legal arguments under Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed. Contrary to Plaintiffs' pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517, 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." Fraga, 607 F. Supp. at 521.

Similarly, the effect of expediting delayed agency action under the fourth TRAC factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); see also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.")

Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is not the only agency that engages in the FBI name check program. Notably, the FBI and USCIS processes' do not occur in vacuums. Any requirement that the FBI or USCIS process Plaintiffs'

name check or applicatiosn within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits.

The requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons. Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. See In re Barr Lab., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003). Furthermore, ordering Plaintiffs' case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit. Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353. The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations. See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005). An agency's good faith efforts to address delays militate against a finding of unreasonableness. See Wright, 587 F.2d at 345.

e. The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed. Conversely, "the good faith of the agency in

addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiffs' FBI name check. Heinauer Decl. ¶ 20. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiffs have failed to show that USCIS will refuse to adjudicate their applications once the FBI completes the requisite name check. See Saleh, 367 F. Supp. 2d at 513; see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps towards completing the background checks for adjudication of their applications. Specifically, USCIS is making every effort to complete adjudication as soon as the name check is completed. Heinauer Decl. ¶ 20.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiffs in the present case insists that this Court find an unreasonable delay based solely on the amount of time passed since receipt of their applications. However, the law requires a more in-depth analysis for mandamus relief under the APA. A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiffs' adjustment of status applications.

### C. MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFFS' CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the plaintiffs' claim is clear and certain.

Kildare, 325 F.3d at 1078. Here, because Plaintiffs have failed to establish that action on their applications have been unreasonably delayed, and they have failed to show that their claim is so clear and certain that mandamus is justified. Furthermore, USCIS has exercised its discretion in determining which name checks should be expedited. Plaintiffs' case meets none of these criteria. Accordingly, the Court should decline to issue a writ of mandamus.

///

///

///

## V. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendants Keisler and Mueller, and grant the remaining Defendants' motion for summary judgment as a matter of law.

Dated: October 12, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

/S/
ILA C. DEISS
Assistant United States Attorney
Attorney for Defendants