Daniel T. Huang, ESQ. (CSB No. 185948)
Attorney for Plaintiffs
Law Office of Daniel Huang
506 N. Garfield Ave., Ste. 100
Alhambra, CA 91801
Tel: (626) 289-0006
Fax: (626) 289-0005
daniel@danielimmigration.com

Attorney for Zhong Zhang and Jie Ma

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ZHONG ZHANG, individually, <br><br> JIE MA, individually, <br><br> Plaintiffs, <br><br> v. <br><br> EMILIO T. GONZALEZ, Director of the U.S. Citizenship and Immigration Services, <br><br> ALBERTO R. GONZALES, as Attorney General of the United States, <br><br> MICHAEL CHERTOFF, in his official capacity, Secretary, United States Department of Homeland Security, <br><br> Defendants. | Case No.: 07-02754 JF <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On October 15, 2007, the Defendants filed their Cross Motion for Summary Judgment and Memorandum in Support raising two primary grounds against Plaintiffs' claims.  First, Defendants argues that relief is not available under the APA.  Second, Defendants asserts that

because Plaintiffs' claims are not clear and certain, Plaintiffs are not entitled to relief.  For the

reasons that follow, Plaintiffs respectfully request this Court **DENY** Defendants' Cross Motion

for Summary Judgment.

## ANALYSIS

### THE PLAINTIFFS ARE ENTITLED TO RELIEF FROM THE DEFENDANT'S UNREASONABLE DELAY IN ADJUDICATING HER APPLICATION UNDER 28 U.S.C. §1331, AND THE APA.

In their Motion for Summary Judgment, the Defendants assert that Plaintiffs are not

entitled to relief under the APA.  (Defendants' Motion for Summary Judgment at ¶1, p. 5).

Defendants argue that since they have wide discretion as to the pace of adjudication, Plaintiffs'

claims are not protected under the APA.  Id.

In the Ninth Circuit, as well, "[t]he default rule is that agency actions are reviewable

under federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and reinforced by the

enactment of the Administrative Procedure Act ("APA"), even if no statute specifically

authorizes judicial review." Ana Int'l Inc. v. Way, 393 F.3d 886, 890 (9th Cir. 2004) (citing Reno

v. Catholic Social Servs., 509 U.S. 43, 56-57 (1993)). Two provisions of the APA apply in the

instant case- 5 U.S.C. § 555(b), which declares that, "[w]ith due regard for the convenience and

necessity of the parties or their representatives and within a reasonable time, each agency shall

proceed to conclude a matter presented to it," and 5 U.S.C. § 706(1), which allows a reviewing

court to "compel agency action unlawfully withheld or unreasonably delayed." These two

statutes require administrative agencies to act within a reasonable period of time, and permit

litigants to sue federal agencies to remedy unreasonable delays in adjudication. See The Mashpee

Wannpanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (amended

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

opinion); <u>Houston v. Nimmo</u>, 670 F.2d 1375, 1377 (9th Cir. 1982) (citing <u>EEOC v. Liberty Loan Corp.</u>, 584 F.2d 853, 855-56 & n.5 (8th Cir. 1978)) (other citations omitted).

In light of the Ninth Circuit determination that relief under Mandamus and the APA are "essentially the same," <u>Independence Mining Co. v. Babbit</u>, 105 F. 3d. 502, 507 (9th Cir. 1997), the Plaintiffs will address their eligibility for relief under the 28 U.S.C. § 1331 and the APA. Plaintiffs reserve the right to file further briefing regarding the applicability of the Mandamus and Venue Act, in support of their Cross Motion for Summary Judgment, if this Court deems it necessary.

**A. This Court May Adjudicate the Plaintiff' Claims for Relief under the APA, because the Defendants Are Required to Act on the Plaintiff' Adjustment of Status Applications Within a Reasonable Time.**

The APA allows "[a] person suffering legal wrong because of agency action." to seek redress in a federal court. 5 U.S.C. § 702. The APA defines the term "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13), and further defines the term "relief" as the "taking of other action on the application or petition of, and beneficial to, a person." 5 U.S.C. § 551. Under the APA, a "reviewing court [can] compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is required to *take*." <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004) (emphasis in original). A discrete "agency action," for purposes of APA relief, refers to the actions specified in 5 U.S.C. § 551(13), including applications for relief, such as immigration benefits applications. <u>See id</u>. at 63.

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

In other similar lawsuits, Defendants has repeatedly conceded that the agency has a non-discretionary duty to adjudicate applications for adjustment of status in cases pending before the United States District Court for the Northern District of California. See Singh v. Still, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2006), and Mazouchi v. Still, No. C-06-07915 RMW, 2007 U.S. Dist, LEXIS 53999, at *3 (N.D. Cal. July 13, 2007) (other internal citations omitted)).  The majority of decisions in our district have found that both 5 U.S.C. § 555(b), which requires administrative adjudication within a "reasonable time," and 8 U.S.C. § 1571, which declares Congress' intent that processing of an immigration benefit application be completed within a 180-day period, provide "meaningful standard[s] against which to judge the agency action," and its timing, under the APA. See Gelfer v. Chertoff, 2007 U.S. Dist. LEXIS 26466 (N.D. Cal. Mar. 22, 2007), and Singh, 470 F. Supp. 2d at 1067).

Furthermore, although not named as a Defendants, the FBI also has a non-discretionary duty to complete Plaintiffs' background investigation.  8 U.S.C. § 1105, which mandates that the Attorney General and the FBI Director provide access to criminal history records "for the purpose of determining whether or not a visa applicant or applicant for admission has a criminal history record indexed in any such file," 8 U.S.C. § 1105(b)(1), 8 U.S.C. § 1360(a), which requires federal immigration officials to maintain a "central index" of the names of "all aliens heretofore admitted or denied admission to the United States," 8 U.S.C. § 1365b, which specifies that the United States Department of Homeland Security must collect and maintain biometric entry and exit data for all applicants for immigration benefits, and the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-317, § 506(d), 108 Stat. 1724, 1766 (1994) (codified at 8 U.S.C. § 1255 note), which directs federal immigration officials to "conduct full fingerprint identification checks

through the FBI for all individuals over sixteen years of age adjusting immigration status in the United States," collectively impose a non-discretionary duty to process security checks required for immigration benefits applications, including applications for adjustment of status.

In addition, Congress has authorized the FBI to "establish and collect fees to process fingerprint identification records and name checks for non-criminal justice, non-law enforcement employment and licensing purposes," including immigration matters, in the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1991, Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990). Federal immigration officials, in turn, collect and pay "biometric service" fees to the FBI for processing fingerprint and name checks for applicants for immigration benefits, under the Departments of Commerce, Justice, And State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, Tit. I, 111 Stat. 2440, 2448 (Nov. 26, 1.997), and 8 U.S.C. § 1356(n).  Also, United States Citizenship and Immigration Services recently increased application fees for immigration benefits, including adjustment of status applications, so that the agency could provide "additional funds to the FBI for name check costs to enhance services." 72 Fed. Reg. 4888-01 (Feb. 1, 2007) (to be codified at 40 C.F.R. pt. 103 (2007)). At least one federal district court has held that the above-mentioned appropriations measures imposed upon the FBI a mandate to complete background checks for immigration benefits applications within a reasonable time. See Kaplan v. Chertoff, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007).

In any event, the underlying FBI security checks cannot be divorced from the Defendants' general, non-discretionary duty to process and adjudicate immigration benefits applications, including applications for adjustment of status.  As Judge Chan noted in Singh. v. Still, 470 F. Supp. 2d at 1068, "[t]he critical issue is not whether a particular branch of the federal

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

government is responsible for the delay; it is whether the individual petitioner versus the

government qua government is responsible." Id. (citing Paunescu v. INS, 76 F. Supp. 2d 896,

903 n.2 (N.D. 11L 1999)); see also Okunev v. Chertoff, No. C 07-00417 HRL, 2007 U.S. Dist.

LEXIS 53161, at *8 (N.D. Cal. July 11, 2007) (declaring that "a government agency cannot shift

the blame to another government agency because the government and all entities involved are

arms of the government") (citing Paunescu, 76 F. Supp. 2d at 903 n.2). At least one federal court

has noted that federal immigration officials' authority to "contract[] out" the responsibility of

conducting security checks to the FBI precluded those officials from resting upon the FBI's

failure to perform its statutory and regulatory duties, in order to avoid responsibility for

unreasonable delays in the adjudication of immigration benefits. See Konchitsky v. Chertoff, No.

C 07-00294 RMW, 2007 U.S. Dist. LEXIS 53998, at *14 (citing Paunescu, 76 F. Supp. 2d at 903

n.2). Thus, the Defendants cannot avoid discharging the USCIS' non-discretionary duty to

adjudicate the Plaintiff's application for immigration benefit within a reasonable time, by

pointing to the FBI's inability to complete the name check for Plaintiff Zhong Zhang's

adjustment of status application.

 For the reasons stated above, this Court must conclude that the Defendants' duty to

process and adjudicate their adjustment of status applications is a discrete, non-discretionary

duty, for purposes of APA relief. Accordingly, this Court can proceed with adjudicating the

Plaintiff's claims for relief under the APA.

**B. An Application of the Six-Factor Test Set Forth in *Telecommunications Research & Action v. FC.C.*, 750 F.2d 70 (D.C. Cir. 1984), and Adopted by the Ninth Circuit and Numerous District Courts in Similar Cases, Warrants the Issuance of Relief to the Plaintiff from the Defendants' Unreasonable Delay in Adjudicating Ms. Zhang's Application for Adjustment of Status.**

Federal courts in the Ninth Circuit generally apply the six-factor test outlined in the District of Columbia Circuit's opinion in <u>Telecommunications Research & Action. v. F.C.C.</u>, 750 F.2d 70 (D.C. Cir. 1984) (hereinafter "TRAC"), when they decide whether to grant requests for relief from unreasonable delay in agency action under the APA, and under 5 U.S.C. § 706(1), in particular. <u>See</u> <u>Brower v. Evans</u>, 257 F.3d 1058, 1068 (9th Cir. 2001) (citations omitted); <u>Independence Mining Co.</u>, 105 F.3d at 507 (same). Those factors, are, as follows:

> (1) the time agencies take to make decisions must be governed by a `rule of reason'[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme nay supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stare; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not `find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

<u>Independence Mining Co.</u>, 105 F.3d at 507 n.7 (<u>quoting</u> <u>TRAC</u>, 750 F.2d at 80). Federal district judges have applied the "TRAC" factors, in particular, when they confront claims of unreasonable delays in federal immigration officials' adjudication of applications for adjustment of status, due to the FBI's failure to complete security checks for the adjustment of status applications. <u>See, e.g.</u>, <u>Singh</u>, 470 F. Supp. 2d at 1069 (<u>quoting</u> <u>Yu</u>, <u>supra</u>, at 934) (other citations omitted); <u>see also</u> <u>Liu v. Novak</u>, No. 07-263 (EGS), 2007 U.S. Dist. LEXIS 63683, at *22 (D.D.C. Aug. 30, 2007) (same); <u>Chan v. Chertoff</u>, No. C 06-17602, 2007 U.S. Dist. LEXIS 64664, at *7 (W.D. Wash. Aug. 30, 2007) (same); <u>Liu v. Chertoff</u>, No. CV-06-1682-ST, 2007 U.S. Dist. LEXIS 65687, at *23 (D. Or. Aug. 29, 2007) (same); <u>Ibrahim v. Chertoff</u>, No. 06cv2071-L (POR), 2007 U.S. Dist. LEXIS 38352, at *20 (S.D. Cal. May 25, 2007) (same) (other citations omitted).

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Contrary to the Defendant's claim that the delay is not unreasonable, the fact that Defendants have delayed Plaintiffs' applications for more than two and half years should makes it unnecessary for the Court to apply the TRAC factors. (Defendants' Motion for Summary Judgment at ¶2, p. 5). The Ninth Circuit has eschewed the application of the TRAC factors in APA cases when "Congress has specifically provided a deadline for performance" by a federal agency. <u>Biodiversity Legal Foundation v. Badgley</u>, 309 F.3d 1166, 1177 n.l 1 (9th Cir. 2002). The Immigration Services and Infrastructure Improvements Act of 2000, in particular, declares that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Congress defined the term "immigration benefit application," in that statute, as "any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act." 8 U.S.C. § 1572(2). Plaintiff Zhong Zhang's application for adjustment of status is indisputably an application for immigration benefits within the meaning of 8 U.S.C. § 1571. Congress' enactment of a six-month time frame for adjudicating immigration benefits applications supplies a definitive deadline for performance, six months, which the Defendants has greatly exceeded in this case. .[1] This is consistent with the language of § 1154(j), which defines an employment based I-485 adjustment application that have been pending for over 180 days as "long delayed."[2] Here, Plaintiffs' adjustment applications have been pending for over two and half years, or more than five times the adjudication period anticipated by Congress in §§ 1154(j) and 1571(b). Therefore, this Court should grant the Plaintiffs' relief under the APA, without applying the TRAC factors, based upon the Defendants' unreasonable delay in adjudicating the Plaintiffs' application for adjustment of

---

[1] 8 U.S.C. § 1571(b).
[2] 8 U.S.C. § 1154 (j).

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

status, without any particularized explanation for the reasons for the agency's delay in adjudication, and for the delay in processing the FBI's security checks for Ms. Zhang's application.

### 1) The Delay is Unreasonable Because Defendants are Not Required to Perform a Complex Task

A balancing of the TRAC factors nonetheless warrants an Order from this Court granting relief to the Plaintiff under the APA, even if this Court determines that 8 U.S.C. § 1571 sets a "normative expectation" for adjudication of immigration benefits applications within a six-month period, Liu, 2007 U.S. Dist. LEXIS 65687, at *21, rather than a mandate. In determining a federal agency's compliance with the "rule of reason,"' the first TRAC factor, a federal court will consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee, 336 F.3d at 1103.

The Defendants' adjudication of Plaintiffs' applications for adjustment of status is not a complex task. To adjudicate an application for adjustment of status, the Defendants need only determine whether Plaintiffs were inspected and admitted or paroled into the United States, whether they properly filed applications for adjustment of status, whether they are eligible to receive immigrant visas and are otherwise admissible to the United States, and whether immigrant visas were immediately available to them when they filed her application for adjustment of status. See 8 U.S.C. § 1255(a). In the present case, Plaintiffs clearly stated in their I-485 adjustment application that they were lawfully admitted to the United States, and have always maintained lawful immigration status.

The Defendants have not questioned Plaintiffs' lawful admission into the United States. Indeed, they could easily confirm Plaintiffs' lawful admission into the United States, by utilizing

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

the United States Department of Homeland Security's automated "central index" of the names of "all aliens heretofore admitted or denied admission to the United States," under 8 U.S.C. § 1360(a).

Plaintiffs filed for adjustment of status with the USCIS on April 12, 2005, (Comp. Exh. A, ¶¶6-7), and the FBI acknowledges receipt of Ms. Zhang's name check request from the USCIS on April 23, 2005. (Plaintiff's Motion for Summary Judgment, Exh. A).  The Defendants has not alleged any improprieties or delays, on the part of the Plaintiff, in providing information necessary to adjudicate Ms. Zhang's application for lawful permanent resident status. See Ibrahim, 2007 U.S. Dist. LEXIS 38352, at *21 (granting APA relief, in part, because "[n]othing in the record suggests that Petitioner may have contributed to the delay by failing to provide necessary information or timely appear[ing] for appointments and interviews"); see also Liu v. Chertoff, 2007 U.S. Dist. LEXIS 61772, at *20 (E.D. Cal. Aug. 22, 2007) (granting relief under the APA, in light of the absence of any evidence of delay attributable to the Plaintiff, or any indication that "this case involves a time-consuming and labor-intensive investigation, or that it involves complex, highly sensitive information precluding a quick resolution").  Indeed, Plaintiffs' numerous attempts to seek decisions on their applications, as detailed in the Exhibits to their Complaint for Writ of Mandamus, militate against any finding, by this Court, that they were dilatory in seeking relief.  As was noted above, Plaintiffs are otherwise admissible into the United States, and had an immigrant visa immediately available to them at the time that their applications for adjustment of status were filed.

The FBI's completion of Plaintiffs' name check is also not a complex task.  Most name checks are "electronically checked and returned to USCIS as having `No Record' within 48-72 hours." If the initial check results in a "hit," or an indication that the applicant may be the subject

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

of an FBI record, the FBI initiates a "secondary manual name search" through administrative, criminal, personnel, and other law enforcement files. See; U.S. Citizenship and Immigration Services, Immigration Security Checks - How and  Why the Process Works, at 2 (Apr. 25, 2006), available at United States Citizenship & Immigration Servs., http://www.uscis.gov/files/pressrelease/security_checks_42506.pdf (visited Sept. 18, 2007) (hereinafter "Immigration Security Checks"); See also National Name Check Program -- Frequently Asked Questions, available at Federal Bureau of Investigation, http://www.fbi.gov/page2/nationalnamecheek.htm (visited Sept. 18, 2007). An additional twenty-two percent of pending name checks are resolved within an additional thirty to sixty-day period, during this secondary manual name search. Id. Most of the remaining name checks are resolved within six months, and that less than one percent of all FBI name checks remain pending for longer than a six-month period. See Immigration  Security Checks (same).

Both the FBI and the Defendants, as a whole, acknowledge that the security check process, including name checks, ordinarily "allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits." See Mazouchi, 2007 U.S. Dist. LEXIS 53999, at *9; Konchitsky, 2007 U.S. Dist. LEXIS 53998, at * 11. The Defendants have not indicated that Ms. Zhang's initial record checks revealed a match, or other derogatory information warranting a further investigation. See Liu, 2007 U.S. Dist. LEXIS 61772, at *20.

The outcome of the Plaintiffs' applications for adjustment of status is both significant and permanent.  An approved Form I-485 Application to Register Permanent Residence or Adjust Status is a statutory prerequisite for Plaintiffs' registration as aliens lawfully admitted to the United States for permanent residence.  See 8 U.S.C. §§ 1255(a), 1255(b). A person remains a

11

1    lawful permanent resident of the United States unless he or she becomes a naturalized United

2    States citizen, is ordered deported from the United States after being placed into removal

3    proceedings, has his or her conditional permanent resident status terminated, or otherwise

4    abandons his or her lawful permanent resident status. See 8 U.S.C. § 1427(a) (describing

5    requirements for naturalization); 8 U.S.C. § 1227 (describing grounds of removability from the

6    United States, after being lawfully admitted to the United States for permanent residence); 8

7    U.S.C. § 1186a (authorizing termination of conditional permanent resident status for spouses of

8    United States citizens); Khodagholian v. Ashcroft, 335 F.3d 1003 (9th Cir. 2003) (describing

9    requirements for abandoning lawful permanent resident status).

10        Contrary to the Defendants' assertion, the agencies have sufficient resources to adjudicate

11   Plaintiffs' application for adjustment of status. (Defendant's Motion, p. 5) When Congress

12   enacted the Immigration Services and Infrastructure Improvements Act of 2000, which contained

13   the above-mentioned 180-day deadline for the processing and adjudication of most immigration

14   benefits applications, it declared that the legislation would "provide the Immigration and

15   Naturalization Service with the mechanisms it needs to eliminate the current backlog in the

16   processing of immigration benefit applications within 1 year after enactment of this Act and to

17   maintain the elimination of the backlog in future years; and [to] provide for regular congressional

18   oversight of the performance of the [DHS] in eliminating the backlog and processing delays in

19   immigration benefits adjudications." American Competitiveness in the Twenty-First Century Act

20   of 2000, Pub. L. No. 106-313, Tit. II, § 203, 114 Stat. 1251, 1262 (2000) (codified at 8 U.S.C. §

21   1571(a)). Congress defined the term "backlog" as, "with respect to an immigration benefit

22   application, the period of time in excess of 180 days that such application has been pending

23   before the [former INS]." Id. § 203(1), 114 Stat. 1263 (codified at 8 U.S.C. § 1572(1)).  At the

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

same time, Congress allocated additional funds to federal immigration officials to ensure timely

adjudication of immigration benefits applications within a 180-day period, in accordance with

the legislative mandate. See id. § 204(b), 114 Stat. 1263 (codified at 8 U.S.C. § 1573). As stated

above at page 5, Congress has provided legislative mechanisms for federal immigration officials

to raise additional funds for the expeditious completion of security checks for immigration

benefits applications by the FBI. Indeed, the United States Department of Homeland Security

invoked those legislative mechanisms earlier this year, when it raised fees for immigration

benefits applications, in part, to account for the FBI's increased costs of processing security

checks for those applications. In any event, the Defendants cannot expect the Plaintiffs to

"relieve the pressure" occasioned by legislative mandates for increased security checks, and the

alleged paucity of resources to resolve those security checks in a timely manner, by "excusing

them from their statutory duty" to adjudicate immigration benefits applications within a

reasonable time, and "letting the cost fall on immigrant plaintiffs." Tang v. Chertoff, No.

07cv10231-NG, 2007 U.S. Dist. LEXIS 46030, at *25-*26 (D. Mass. June 26, 2007).


### 2) Statutory or Regulatory Timetable for Adjudication

With regard to the second TRAC factor, several federal district judges have noted that

Congress set a "normative expectation" that immigration benefits applications, including

applications for adjustment of status, would ordinarily be adjudicated within 180 days, when it

enacted 8 U.S.C. § 1571. See Chan, 2007 U.S. Dist. LEXIS 64664, at *12 (quoting Konchitsky,

2007 U.S. Dist. LEXIS 53998, at *11) (other citations omitted); Liu, 2007 U.S. Dist, LEXIS

65687, at *21 (same). In addition, a number of federal district judges have looked to the average

processing times for the processing of immigration benefits applications, and for conducting

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

security checks, to ascertain the reasonableness of delays in adjudication. See Liu, 2007 U.S. Dist. LEXIS 65687, at *24; see also Liu, 2007 U.S. Dist. LEXIS 61772, at *18 (same). In this respect, the Nebraska Service Center, where Plaintiffs filed their applications, states that it processes Form I-485 Applications to Register Permanent Residence or Adjust Status within a ten months period. See U.S. Citizenship and Immigration Services, Nebraska Service Center Processing Dates (Oct. 15, 2007), available at USCIS, https://egov.uscis.gov/cris/jsps/Processtimes.jsp?SeviceCenter=NSC (visited October 26, 2007).

The Defendants assert that the second TRAC factor is inapplicable in the present case, "because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time." (Defendants' Motion for Summary Judgment at p. 6.) The Defendants contend that 8 U.S.C. § 1571, in which Congress specified a 180-day period for the adjudication of almost all immigration benefits applications, cannot guide this Court's analysis of the reasonableness of their delay in adjudicating the Plaintiffs' adjustment of status applications, under the second TRAC factor, because that statute sets a "merely precatory," rather than a mandatory guideline for adjudication, and does not reflect the increased complexity and volume of security checks that must be processed by the FBI, following the events of September 11, 2001. See id. at pp. 6-8.

The Defendants misconstrue the second TRAC factor. The second TRAC factor specifies that, "'where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.'" Independence Mining Co., 105 F.3d at 507 (quoting TRAC, 750 F.2d at 80). It does not require a statutorily mandated timeline for agency decision-making. The TRAC court's reference to "other indication[s]" of the speed of agency decision-making, as well,

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1    suggests that courts can look outside guidelines set forth in statutes and federal regulations, to

2    ascertain the reasonableness of delays in agency adjudication. Indeed, a number of federal courts,

3    including this Court, have turned to 8 U.S.C. § 1571 to derive a "'meaningful standard for the

4    pace of adjudication of adjustment of status applications,'" and to ascertain Congress'

5    "normative expectation...of a reasonable processing time for an immigrant benefit application as

6    no more than 180 days after initial application.'" <u>Konchitsky</u>, 2007 U.S. Dist. LEXIS 53998, at

7    *4, and <u>Abbasfar v. Chertoff</u>, 2007 U.S. Dist. LEXIS 65060, at *3 (N.D. Cal. Aug. 21, 2007)).

8         In addition, some federal courts have used 8 C.F.R. § 103.2(b)(18) (2007), which governs

9    "Withholding Adjudication" of immigration benefits applications, to guide their evaluation of the

10   reasonableness of federal immigration officials' delays in adjudication applications for

11   adjustment of status, under the Administrative Procedure Act. <u>See, e.g.</u>, <u>Dong v. Chertoff</u>, No. C

12   07-0266 SBA, 2007 U.S. Dist. LEXIS 68536, at *28 (N.D. Cal. Sept. 6, 2007) (<u>citing</u> <u>Cao</u>

13   <u>v.Upchurch</u>, 496 F. Supp. 2d 569 (E.D. Pa. 2007)). That regulation provides:

> A district director may authorize withholding adjudication of a visa petition or
> other application if the district director determines that an investigation has been
> undertaken involving a matter relating to eligibility or the exercise of discretion,
> where applicable, in connection with the application or petition, and that the
> disclosure of information to the applicant or petitioner in connection with the
> adjudication of the application or petition would prejudice the ongoing
> investigation. If an investigation has been undertaken and has not been completed
> within one year of its inception, the district director shall review the matter and
> determine whether adjudication of the petition or application should be held in
> abeyance for six months or until the investigation is completed, whichever comes
> sooner. If, after six months of the district director's determination, the
> investigation has not been completed, the matter shall be reviewed again by the
> district director and, if he/she concludes that more time is needed to complete the
> investigation, adjudication may be held in abeyance for up to another six months.
> If the investigation is not completed at the end of that time, the matter shall be
> referred to the regional commissioner, who may authorize that adjudication be
> held in abeyance for another six months. Thereafter, if the Associate
> Commissioner, Examinations, with the concurrence of the Associate
> Commissioner, Enforcement, determines it is necessary to continue to withhold
> adjudication pending completion of the investigation, he/she shall review that

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

determination every six months.

8 C.F.R. § 103.2(b)(18) (2007). Those federal district courts have deemed unreasonable delays in

the adjudication of adjustment of status applications, due to pending FBI checks, in the absence

of evidence that federal immigration officials complied with the requirements of section

103.2(b)(18) in delaying a final decision. See, e.g., Dong, 2007 U.S. Dist. LEXIS 68536, at *30-

*31 (finding unreasonable a two-year delay in adjudicating an adjustment of status application,

due to pending FBI security checks, in the absence of evidence that the relevant USCIS District

Director "determined adjudication of the applications should have been held in abeyance,"

conducted the additional six-month reviews of the case to justify further withholding

adjudication, or otherwise complied with the requirements of 8 C.F.R. § 103.2(b)(18) (2007)).

As is stated above, the Defendants' own six-month processing time for the adjudication of

adjustment of status applications and for completing FBI security checks for those applications,

in declarations or in other sources, also provide a sufficient framework for this Court's analysis

of the reasonableness of the delay in this case, under the second TRAC factor.

Contrary to Defendants' assertion, the "normative expectation" that Congress set when it

enacted the 180-day deadline in 8 U.S.C. § 1571(b) was not upset by the events of September 11,

2001, and by the increased complexity and volume of FBI security checks after that date.

(Defendant's Motion for Summary Judgment, p. 7)  In 8 U.S.C. § 1571, Congress declared that

"Section 1571 declares that "[i]t is the sense of Congress that the processing of an immigration

benefit application should be completed not later than 180 days after the initial filing of the

application, except that a petition for a nonimmigrant visa under section 214(c) of the [INA, 8

U.S.C. § 1184(c)] should be processed not later than 30 days after the filing of the petition." 8

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

U.S.C. § 1571(b).  Congress defined the term "immigration benefit application" as "any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act." 8 U.S.C. § 1572(2). Congress has not altered those statutory provisions since it enacted them as part of the Immigration Services and Infrastructure Improvements Act of 2000. See American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, Tit. II, 114 Stat. 1251, 1262 (2000). In fact, Congress provided, in the Homeland Security Act of 2002, that "[t]he Director of the Bureau of Citizenship and Immigration Services is authorized to implement innovative pilot initiatives to eliminate any remaining backlog in the processing of immigration benefit applications, and to prevent any backlog in the processing of such applications from recurring, in accordance with section 204(a) of the Immigration Services and Infrastructure Improvements Act of 2000 (8 U.S.C. 1573(a))," such as "increasing personnel, transferring personnel to focus on areas with the largest potential for backlog, and streamlining paperwork." 6 U.S.C. § 271(a)(5). As stated above, Congress has repeatedly created financial mechanisms to facilitate the FBI's expeditious completion of all security checks for adjustment of status applications. USCIS has, as well, increased application fees for immigration benefits, including adjustment of status applications, so that the agency could provide "additional funds to the FBI for name check costs to enhance services." 72 Fed. Reg. 4888-01 (Feb. 1, 2007) (to be codified at 40 C.F.R. pt. 103 (2007)). In light of Congress' failure to amend 8 U.S.C. § 1571, its repeated insistence upon federal immigration officials' elimination of backlogs in processing immigration benefits applications, and the resources available to the Defendants to expeditiously process FBI security checks for applications for adjustment of status, the Defendants cannot reasonably assert that Congress failed to sufficiently

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

account for post-9/11 needs, when it promulgated, and left intact, the 180-day guideline for

adjudication in 8 U.S.C. § 1571.

The delay of over two and half years in the Defendants' adjudication of the Plaintiffs'

adjustment of status application far exceeds the 180-day guideline set forth in 8 U.S.C. § 1571,

and the six month processing time for adjustment of status applications estimated by the

Nebraska Service Center in most cases. The FBI's two and half year delay in its completion of

the name check for Ms. Zhong Zhang, as well, far exceeds the maximum six-month guideline for

processing FBI name checks, that both USCIS and the FBI have set forth for all but one percent

of all name checks, in the Defendants' declarations. The Defendants have not withheld

adjudication of the Plaintiffs' applications under 8 C.F.R. § 103.2(b)(18) (2007), and have not

conducted the required reviews under that regulation, to justify further delays in decision-making

in the Plaintiffs' case. Due to the Defendants' prolonged delays in adjudication, far beyond the

normative statutory or regulatory guidelines created by Congress or other entities, this Court

must conclude that the application of the second TRAC factor weighs in favor of granting relief

to the Plaintiffs.


**3) The Impact of the Defendant's Delay in Adjudication on Plaintiffs' Health and Welfare, and the Nature and Extent of the Interests Prejudiced by the Delay.**

With respect to the third and fifth TRAC factors, the Defendants again assert, as they

have in prior pleadings, that the interests of national security should predominate over the

Plaintiffs' interests in the expeditious adjudication of their adjustment of status applications, and

in attaining the rights and benefits of lawful permanent resident status in the United States.

(Defendants' Motion for Summary Judgment at pp. 8-9). The Defendants' citation of national

security interests is "something of a red herring," because "there is no evidence before this Court

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1  suggesting there are national security issues implicated in the applications." <u>Dong</u>, 2007 U.S.

2  Dist. LEXIS 68536, at *33. The Defendants have not identified any "hit" on Ms. Zhang's name

3  or identifying information, and have not cited any information indicating that he is a national

4  security threat.

5      The Plaintiffs have been living and working in the Untied States throughout the pendency

6  of their applications, without raising national security concerns. The Defendants have taken no

7  action to expedite Ms. Zhang's name check to satisfy national security interests. Moreover, if

8  national security concerns existed, 8 C.F.R. § 103.2(b)(18), which the Defendants have not

9  invoked, accounts for those concerns, and allows the Defendants to withhold adjudication for

10 further investigation.  <u>See</u> <u>Dong</u>, 2007 U.S. Dist. LEXIS 65686, at *34. In the absence of

11 particularized information indicating the presence of a national security threat, "the mere

12 invocation of national security is not enough to render agency delay reasonable per se." <u>Singh</u>,

13 470 F. Supp. at 1068.

14     Contrary to Defendants' assertion, the nature and extent of the human interests involved

15 in the instant case weigh in favor of relief under the APA, under the third and fifth TRAC

16 factors. Federal courts have noted that "delays in the immigration arena affect human health and

17 welfare and are therefore less tolerable than those that implicate only economic interests."

18 <u>Ibrahim</u>, 2007 U.S. Dist. LEXIS 38352, at *22 (citing Singh, 470 F. Supp. 2d at 1069). As a

19 result of the Defendants' unreasonable delay in adjudicating Plaintiffs' application for

20 adjustment of status, they have been denied the important benefits of lawful permanent resident

21 status, including the right to freely travel or work in the United States and the ability to petition

22 for the immigration of close family members. <u>See id.</u>; <u>see also</u> <u>Liu</u>, 2007 U.S. Dist. LEXIS

23 63683, at *25 (<u>citing</u> <u>Singh</u>, 470 F. Supp. 2d at 1070). The delay has also prolonged, and

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

adversely impacted, Plaintiffs' ability to attain United States citizenship status after being

granted permanent residency. See Ibrahim, 2007 U.S. Dist. LEXIS 38352, at *22, Liu, 2007 U.S.

Dist. LEXIS 63683, at *22 (citing Singh, 470 P. Supp. 2d at 70). Therefore, the nature and

importance of the interests involved, on the part of the Plaintiffs, warrant the issuance of relief to

them under the APA.

This Court's application of the fourth TRAC factor, as well, warrants the issuance of

relief for the Plaintiffs. Plaintiff Zhong Zhang, in particular, is applying for lawful permanent

resident status as the beneficiary of an employment-based third preference immigrant visa

petition for a professional skilled worker under 8 U.S.C. § 1153(b)(3)(A)(i). Highly skilled

immigrants, such as Ms. Zhang, are ordinarily given priority for lawful permanent resident

status, due to the benefits that such individuals bring to American society and economy. The

need for skilled workers has motivated Congress' most recent efforts to enact comprehensive

immigration reform. See e.g., Julia Preston, Legal Immigrants Rally at Capitol to Protest

Backlog, N.Y. Times, Sept. 18, 2007, available at New York Times,

http://www.nytimes.com/2007/09/l9/us/19immigration.html?adxnnl=1&adxnnlx=1190176197-

eUIGNcns1NafP7CGgF7xdw (Visited September 18, 2007). In fact, there was no waiting at the

time when Ms. Zhang submitted her application for adjustment of status in the third

employment-based preference category.

In contrast, Defendants' vague assertions of national security interests and lack of sources

resources can not justify the prolonged delay in the adjudication of this case. (Defendant's

Motion, pp. 9-10). If the Defendants was genuinely concerned about national security, the

agency should have completed Ms. Zhang's background investigation within a reasonable time.

Federal courts have noted that "[d]elays of a significant magnitude, particularly when they occur

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork."' <u>Liu</u>, 2007 U.S. Dist. LEXIS 65687, at *26 (<u>quoting</u> <u>Yu</u>, 36 F. Supp. 2d at 934). Also, "mere invocation of national security is not enough to render agency delay reasonable per se,"' and to warrant Defendants' prioritization of national security interests over the Plaintiffs' interests in attaining lawful permanent resident status. <u>Id</u>. (<u>quoting</u> <u>Singh</u>, 470 F. Supp. 2d at 1069).

  Finally, although there is no overt evidence of impropriety, on the part of the Defendants, in their adjudication of Plaintiffs' application for adjustment of status, the Defendants have failed to provide an explanation for the two and half years of delay in processing Ms. Zhang's FBI name check, and in deciding her application.  Despite their claim that they are "exercising every effort to address the delay," Defendant do not explain the reason for the delay in processing Zhong Zhang's FBI name check, and in adjudicating her applications for adjustment of status, apart from a generalized explanation of FBI security check process, and an increase in both the volume and substance of FBI security checks in a post-9/11 world.  (Defendants' Motion for Summary Judgment, pp. 9-11).  The Defendants also does not address why the Plaintiff's case warrants increased scrutiny, apart from other immigration benefits applicants, and the reasons for prolonging the adjudication of the Plaintiff' case far beyond the 180-day normative standard set by Congress.  Federal courts in the Northern District of California, and elsewhere, have cited the absence of particularized explanations for prolonged delays in the Defendants' adjudication of immigration benefits applications, and in the FBI's security checks for those applications, as justification for holding those delays unreasonable as a matter of law. <u>See</u>, <u>e.g.</u>, <u>Yu</u>, 36 F. Supp. 2d at 935 (finding unreasonable delay of over two years in processing of application for adjustment of status); <u>Liu</u>, 2007 U.S. Dist. LEXIS 65687, at *27 (three-year delay); <u>Liu</u>, 2007

U.S. Dist. LEXIS 61772, at *21 (two-and-a-half year delay); <u>Okunev</u>, 2007 U.S. Dist. LEXIS 53161, at *8 (three-year delay); <u>Bo Tang v. Chertoff</u>, No. C 070683 .1F, 2007 U.S. Dist. LEXIS 44388, at *8 (N.D. Cal. June 5, 2007) (two-year delay).

**4) The Effect of the Expeditious Adjudication of the Plaintiffs' Applications Upon Other "First in Line" Applicants**

The Defendants argue, as well, that this Court's issuance of relief to the Plaintiffs would "reorder the queue of applications," and otherwise allow applicants for immigration benefits to use mandamus actions to have their applications processed ahead of other applicants who filed for immigration benefits at an earlier time. (Defendants' Motion for Summary Judgment at pp. 11-12). The Defendants' argument, again, assumes that USCIS and the FBI has, in fact, processed applications for adjustment of status in order. In fact, the Plaintiffs in this case "have more than 'waited their turn,' having seen millions of later-filed applications processed before theirs," and within the Defendants' stated processing times for adjustment of status applications. <u>Dong</u>, 2007 U.S. Dist. LEXIS 68536, at *38. Thus, "far from 'cutting in line,' or gaining an unfair advantage vis-a-vis similarly situated applicants, the plaintiffs are simply asking to be placed back in the queue." <u>Id.</u> The Plaintiffs urge this Court to reject the Defendants' arguments, in this regard.

**CONCLUSION**

For the reasons stated above, the Plaintiffs respectfully request that this Court grant their

///

///

///

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Motion for summary judgment, and issue an Order requiring the Defendants to adjudicate their

2   applications for adjustment of status.

3                                                    Respectfully submitted,

4

5

6

7   Dated: October 26, 2007

8                                              /s/ Daniel T. Huang
                                               DANIEL T. HUANG
9                                              Law Office of Daniel Huang
                                               506 N. Garfield Ave., STE. 100
10                                             Alhambra, CA 91801

11                                             Attorney for Zhong Zhang and Jie Ma

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07-02754 JF
                                             OPPOSITION TO DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

                        SCOTT N. SCHOOLS
                        United States Attorney

                        JOANN M. SWANSON
                        Assistant United States Attorney

                        ILA C. DEISS
                        Assistant United States Attorney
                        450 Golden Gate Ave., Box 36055
                        San Francisco, CA 94102

Dated: October 26, 2007

                        /s/ DANIEL T. HUANG
                        DANIEL T. HUANG
                        Attorney for Plaintiff

07-02754 JF
OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT